IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        CRIMINAL ACTION NO. 2:24-cr-00101

TRISTIAN GERRELL-ROBERT MURPHY,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Defendant's *Motion to Suppress Evidence* (Document 26), the *Response of the United States in Opposition to Defendant's Motion to Suppress Evidence* (Document 33), and the *Supplemental Response of the United States in Opposition to Defendant's Motion to Suppress Evidence* (Document 42), as well as all attached exhibits. The Court held a hearing on the matter on October 9, 2024, and has considered the testimony, exhibits, and arguments presented during the hearing. For the reasons stated herein, the Court finds that the motion to suppress should be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Defendant, Tristian Gerrell-Robert Murphy, was charged with possession of firearms by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), in a single-count *Indictment* (Document 1) returned on June 25, 2024. The firearms were discovered by officers with the St. Albans Police Department in a search of his vehicle during a traffic stop on June 10, 2024.

Lt. B.J. Perry went to the area of Sutherland Drive in St. Albans to conduct surveillance in response to a tip about a residence and an out-of-state vehicle. Sgt. D.D. Griffith and Det. C.R. French also proceeded to the area, remaining on or near the main highway rather than in the residential neighborhood where Lt. Perry was watching for Mr. Murphy's vehicle. All three officers work undercover and were in unmarked vehicles with tinted windows. Lt. Perry texted the other officers that he had seen the black car and advised them to come to the area in "something with lights." (Text Message, Def.'s Ex. 3) (Document 40-6.)

Lt. Perry parked on S. Washington St, near the intersection with Sutherland Drive. There are stop signs on Sutherland Drive at the intersection. He testified that he observed the vehicle of interest, a black sedan, come down Sutherland Drive and turn left onto S. Washington Street without stopping at the stop sign.[1] Using a private, unrecorded communication channel, Lt. Perry informed the other officers that he had observed Mr. Murphy run a stop sign and the direction he was going. Det. French pulled out behind Mr. Murphy at some point, but because of heavy traffic, there were vehicles between his truck and Mr. Murphy's car, and Mr. Murphy was not pulled over immediately. Det. French, driving an unmarked Ford truck with tinted windows equipped with lights and sirens, initiated a traffic stop a mile or two from the stop sign at issue. Lt. Perry arrived about two minutes into the traffic stop. Mr. Murphy was out of the vehicle when he arrived, while his girlfriend and her son remained in the car. They were both removed at some point for a search of the car.[2] Lt. Perry found firearms under the seat, in the glovebox, and in the trunk, as well as

---

[1] In the text messages, Lt. Perry describes the vehicle as a black car, "Maryland tags black male." (Text Messages, Def.'s Ex. 3.) The United States' brief indicates that the vehicle had Michigan registration. (U.S. Resp. at 1.)
[2] The Defendant contends that the stop was invalid from its inception. He does not otherwise challenge the search. Detective French did not testify during the suppression hearing. Based on the briefing and the recorded interview, when Detective French noted an odor of marijuana, Mr. Murphy promptly admitted to marijuana use and handed Det. French a small quantity of marijuana.

2

a magazine in a backpack. Mr. Murphy was cooperative throughout the stop, advising the officers of where to look for the guns. He admitted that he was on supervised release, and he was arrested for being a felon in possession of firearms.

Mr. Murphy was taken to the police station, where he consented, after being Mirandized, to a recorded interview. At the beginning of the interview, Lt. Perry explains that they were running surveillance and observed him run a stop sign. Mr. Murphy responds that he was "wondering where the hell that stop sign was at." (Interview at 3:24.) He notes that he had stopped somewhere to put the Sheetz gas station into his GPS and asks about the location of the stop sign at issue. Lt. Perry gave a somewhat confused and inaccurate description of the intersection, indicating that it "kind of looks like it's a turn, but there's a stop sign there….you've got another street that comes off the hill." (*Id.* at 3:49.)[3] Mr. Murphy again expressed his confusion about where the stop sign was, and after further explanation that he had turned left coming down the hill, replied that he thought he had "stopped right there," though he later indicated that he may not have seen the stop sign. (*Id*. at 4:23.)

Mr. Murphy testified during the suppression hearing. He claimed that he had a clear recollection of the location after seeing photographs and maps and was sure he had stopped at the stop sign in question. Given the time that had passed since the traffic stop and his statements in the interview immediately after the stop, the Court does not credit his hearing testimony. He did appear truthful in the interview, and his prompt admission to law enforcement that he possessed marijuana and firearms and was on supervised release lends credibility to his statement at the time

---

3 During the hearing, with the assistance of photos of the intersection, Lt. Perry conceded that Sutherland Drive intersects S. Washington St. at a 90 degree angle a short distance after the curve and hill he described.

that he believed he had stopped at all stop signs, and if he failed to stop at a stop sign, he had not seen it.

## STANDARD OF REVIEW

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law. *United States v. Stevenson,* 396 F.3d 538, 541 (4th Cir. 2005). On a motion to suppress, the burden of proof is on the party who seeks to suppress the evidence. *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). However, once the defendant establishes a proper basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## DISCUSSION

The Defendant argues that the stop was invalid from its inception because there is insufficient evidence that he failed to stop at the stop sign. In addition, based on testimony from Lt. Perry during the hearing, the Defendant argues that the stop was illegal because Det. French pulled him over in an unmarked vehicle with tinted windows, and state law specifically prohibits the use of such vehicles for routine traffic stops.

The United States contends that Lt. Perry's clear, consistent testimony establishes that he observed a traffic violation that justified the stop. It cites precedent establishing that pretextual stops are permissible, where objective justification for the stop exists. The United States further argues that the window-tint statute is not a basis for suppression because the stop was not "routine" within the meaning of the statute, and Supreme Court precedent establishes that violations of state law regarding traffic stops do not alter the Fourth Amendment reasonableness standard.

4

The Fourth Amendment to the United States Constitution protects people against unreasonable searches or seizures. U.S. Const. amend. IV. Brief detention pursuant to a traffic stop constitutes a "seizure" for purposes of the Fourth Amendment and must therefore be "reasonable." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. "[T]he actual motivations of the individual officers involved" and their "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813 (finding pretextual stops permissible). "Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop," including checking ID, licenses, registration, and running a computer check. *United States v. Branch*, 537 F.3d 328, 335–36 (4th Cir. 2008).

The Court finds that the United States has shown, by a preponderance of the evidence, that Lt. Perry observed Mr. Murphy run a stop sign. Lt. Perry's detailed description of his observations, both in the recorded interview immediately after the traffic stop and during the hearing, appeared credible. The Court did not find Mr. Murphy's hearing testimony claiming a clear recollection of stopping at the stop sign to be credible. The Defendant presented evidence in an effort to cast some doubt on whether the officer actually observed a traffic violation, including texts indicating that the officers planned to conduct a traffic stop before observing any violation. However, having heard testimony from Lt. Perry, the Court does not find that the questions raised by that evidence are sufficient to outweigh his credible testimony. Thus, the

Court finds that the Defendant's motion to suppress based on a lack of probable cause to initiate the traffic stop should be denied.

West Virginia's statute establishing permissible levels of window-tint on vehicles includes an exception for "unmarked law-enforcement vehicles primarily used for covert or undercover enforcement," allowing those vehicles to have darker window-tinting. W. Va. Code § 17C-15-36a(a). It further provides that "[n]o unmarked law-enforcement vehicle, herein exempted, may engage in routine traffic stops." *Id.* The United States concedes that Det. French's vehicle was an unmarked law-enforcement vehicle with tinted windows. There has been no suggestion that the officers had probable cause to stop Mr. Murphy for anything other than running a stop sign. Thus, for purpose of ruling the Court will assume that the stop was a routine traffic stop within the meaning of W. Va. Code § 17C-15-36a.

The Supreme Court has held that an arrest is "constitutionally reasonable" "when an officer has probable cause to believe a person committed even a minor crime in his presence," with no need for balancing of interests. *Virginia v. Moore*, 553 U.S. 164, 171 (2008). That binding precedent establishes that a search or seizure is not rendered constitutionally unreasonable even when it is illegal under state law. *Id.* at 178 ("the arrest rules that the officers violated were those of state law alone, and…it is not the province of the Fourth Amendment to enforce state law"). The proposition that an officer's illegal action may nonetheless be reasonable is, in the Court's view, rather counterintuitive, and it is not reasoning the Court would adopt if this were an issue of first impression. The Supreme Court precedent on this issue is unambiguous, however, and it is clearly applicable here. The Fourth Circuit has likewise held that courts cannot generally create a suppression remedy for statutory violations that do not contain such a remedy. *United States v.*

*Santos-Portillo*, 997 F.3d 159, 164 (4th Cir. 2021). Therefore, the Defendant's motion to suppress on the basis that the stop was unlawful under state code must be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Defendant's *Motion to Suppress Evidence* (Document 26) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:   October 17, 2024

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA